NOT DESIGNATED FOR PUBLICATION

No. 128,214

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

RAHEEM KERON ARMSTEAD,
*Appellant.*


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed July 10, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before MALONE, P.J., ATCHESON, J., and MICHAEL B. BUSER, retired Court of Appeals Judge, assigned.


MALONE, J.: Raheem Keron Armstead appeals his conviction following a jury trial of intentional aggravated battery causing great bodily harm. Armstead claims the State committed reversible prosecutorial error during closing argument. He also claims the district court committed clear error by failing to instruct the jury on reckless aggravated battery. After thoroughly reviewing the record and the parties' arguments, we find no reversible error and affirm the district court's judgment.

1

*Factual and procedural background*

In the early morning hours of April 11, 2024, Jeffrey Sparks was a passenger in a friend's car parked in a hotel parking lot in Leavenworth waiting to pick up another friend. While waiting in the car, the driver declared that she saw Armstead approaching the car. Armstead walked up to the car, and in an apparent unprovoked attack, he suddenly opened the front passenger door and punched Sparks several times in the face. Sparks climbed into the back seat to escape the blows and Armstead turned and walked away. The brief attack resulted in fractures to Sparks' right orbital, lacerations on Sparks' mouth and forehead, a bloody nose, and red marks and swelling on Sparks' face.

Sparks went to his grandmother's house after the attack, and his grandmother called the police. John Yates, a patrol officer with the Leavenworth Police Department, responded to the call and contacted Sparks who was lying on the ground while "crying hysterically and saying that he was in pain." Sparks told Yates what happened "[w]ith difficulty" because of his pain and emotional state. Sparks was later taken to a hospital by ambulance. CT scans were taken in the emergency room, but Sparks was not admitted to the hospital. After speaking with Sparks, Yates went to the hotel to review security camera footage where he found footage of the attack. The hotel employee assisting Yates had difficulty downloading the footage, so Yates recorded a video of the security camera footage with his department's issued cellphone.

The State charged Armstead with one count of intentional aggravated battery causing great bodily harm and the case proceeded to a one-day jury trial. Armstead did not dispute his identity and the fact that he attacked Sparks in the car. The trial focused on whether Armstead caused great bodily harm to support the aggravated battery charge versus a lesser included offense. Yates testified for the State. The photographs he took of Sparks' injuries after the attack were admitted into evidence. Clips from the video of the security camera footage depicting the attack were also admitted into evidence.

2

Sparks described the attack and his injuries to the jury. He testified that he felt a crack in his face when Armstead hit him. He described his injuries as a broken eye socket and a "couple [of] cuts." At the time of trial, he still had blurry vision while looking down. Sparks testified that he did not follow up with recommended treatment or surgery because he has no health insurance. Sparks believed Armstead attacked him "to get to [Sparks'] sister" because of unspecified "issues" between Armstead and Sparks' sister.

Eric Hatfield, a radiologist who reviewed Sparks' CT scans after the attack, testified last. Hatfield identified "fractures of the right orbital floor which is the bottom wall of your eye socket and the left nasal process of the maxilla which is the base of your nose." Hatfield described a fracture as, "where a bone is broken." Hatfield agreed the fractures were "mildly depressed," which he described as, "slightly out of alignment."

Armstead presented no evidence. He argued in closing that the State failed to prove great bodily harm and that the jury should convict on the lesser included offense of battery instead of aggravated battery. The district court instructed the jury on aggravated battery causing great bodily harm, aggravated battery causing bodily harm in a manner whereby great bodily harm, disfigurement, or death can be inflicted, and simple battery.

The jury found Armstead guilty as charged. Armstead's presentence investigation report disclosed 38 prior convictions including 5 prior person felony convictions. The district court sentenced Armstead to 162 months in prison with 36 months' postrelease supervision. Armstead timely appealed the district court's judgment.

*Did the State commit reversible prosecutorial error during closing argument?*

Armstead claims the State committed reversible prosecutorial error during closing and rebuttal arguments in three ways. First, Armstead argues the prosecutor erred by misstating the law on what constitutes great bodily harm. Second, Armstead objects to

the prosecutor telling the jury "you know" it was great bodily harm. Third, Armstrong argues the prosecutor improperly told the jury not to consider instructions on lesser included offenses of aggravated battery. The State argues there was no prosecutorial error during closing argument, but any error that may have occurred was harmless.

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

We first examine the prosecutor's explanation to the jury on what constitutes great bodily harm. During closing argument, the prosecutor argued:

> "Now, great bodily harm is really defined as more than slight. Trivial. Minor. Moderate. It is more than just bruising. That is what you would get if you have just bodily harm, that very slight harm.
>
>     . . . .
>
>     "So let's talk about that great bodily harm. What you have here is Jeffrey Sparks. A doctor told you he has two fractures, one for the orbital bone, the very floor of the orbital bone. That is his eye socket. Right at the very bottom of his eye, there's a fracture there. That is broken. The bone is broken. You have the maxilla bone as well which is that sinus area. The bone around that sinus area on the left side is also broken.
>
>     "So he has two broken bones. That is great bodily harm. He still has problems from that. He even told you he can't really look down, and when he does it starts to blur

4

out. He can't really see when he does. That is great bodily harm. Now, there is a question about mildly depressed, and mildly doesn't mean it's a mild break. It means it's a change in the way the bone is. It is not something that just goes together kind of like that teacup that doesn't look broken. It means that bone has shifted. It is not just broken. It has shifted."

And in rebuttal argument, the prosecutor argued:

"So when you look at that defense talks about it being slightly out of alignment, bones aren't supposed to be slightly out of alignment. That is great bodily harm.

"When you look at it, he says what degree and what level? Well, you have two fractures. Fractures are a fancy word. They mean broken bone. That is great bodily harm. When you look at the victim, look at the photos. He is bruised. He is cut. He is still three months later having eye issues. That is great bodily harm. Great bodily harm is more than slight. More than trivial. More than moderate. More than just bruising.

"He was hurt. He was broken. He went to the hospital for treatment. He should have gone back and seen specialists. That is great bodily harm. So you can find him guilty of all three counts, but the evidence shows he is guilty of the primary count, great bodily harm. I would ask you to find him guilty of that."

Armstead points to these statements and claims the prosecutor misstated the law on the definition of great bodily harm. He takes issue with the prosecutor defining great bodily harm as "more than slight. Trivial. Minor. Moderate. It is more than just bruising. That is what you would get if you have just bodily harm, that very slight harm." But he concedes that caselaw defines great bodily harm as "'more than slight, trivial, minor, or moderate harm, [that] does not include mere bruising, which is likely to be sustained by simple battery.'" *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017) (quoting *State v. Green*, 280 Kan. 758, 765, 127 P.3d 241 [2006]). The prosecutor's definition was accurate with insignificant differences. See *State v. Lewis*, No. 111,880, 2015 WL 7434731, at *2 (Kan. App. 2015) (unpublished opinion) (approving a prosecutor defining great bodily harm with "insignificant differences" to the caselaw definition).

Armstead's main complaint is that several times during closing argument the prosecutor described Sparks' injuries and then declared, "[t]hat is great bodily harm." Armstead asserts, "[t]he prosecutor did not argue that the jury *should find* that the broken bones in this case were great bodily harm—he argued that they simply *were* great bodily harm." But as the State points out, "Armstead confuses the legal fact that a jury cannot be instructed that a broken bone is per se great bodily harm with the idea that the State cannot argue a broken bone is great bodily harm." It would have been error for the district court to instruct the jury that a fractured bone was great bodily harm as a matter of law. See *State v. Brice*, 276 Kan. 758, 774, 80 P.3d 1113 (2003) (finding district court erred by instructing jury that a through and through bullet wound means great bodily harm). But for the prosecutor to argue to the jury that Sparks' injuries including his fractured eye socket were great bodily harm is within "the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *Sherman*, 305 Kan. at 109.

Our decision in *State v. Bethea*, No. 103,846, 2011 WL 5027088, at *5-6 (Kan. App. 2011) (unpublished opinion) applies here. Bethea made a similar claim to Armstead based on the following statements made during the prosecutor's closing argument:

> "'You heard about—testimony about the charge of aggravated battery. Ms. Williams testified that she had to have two staples placed in her scalp. She had a large growth because of the blood collecting under her skin and because of the severe beating she sustained by the defendant. The lesser included charge of battery is simply not applicable. That she intentionally caused bodily harm that could be as little as a bruise. Bodily harm, this is much more than bodily harm. Certainly.'" 2011 WL 5027088, at *5.

This court found that the prosecutor's definition of great bodily harm accurately reflected the law and that the prosecutor did not inject a personal opinion into the argument by declaring that the harm was much more than bodily harm. 2011 WL 5027088, at *5. In making the latter finding, this court reasoned that

6

"the prosecutor was attempting to assist the jury in understanding the distinction between mere bruising, which would not be sufficient for aggravated battery, and the scalp laceration and large amount of the blood collecting under her skin, which were caused by the severe beating Williams sustained at the hands of Bethea." 2011 WL 5027088, at *5.

After thoroughly reviewing the prosecutor's closing argument here, we make a similar finding. The entire closing and rebuttal argument add context to show the prosecutor accurately defined great bodily harm and then addressed the evidence of Sparks' injuries to argue they amounted to something more than bodily harm. As in *Bethea*, we find these comments within the wide latitude afforded to the prosecution when commenting on the evidence. 2011 WL 5027088, at *5.

Finally, we observe that in defense counsel's closing argument, he described the fractured eye socket Sparks sustained and argued: "This is not great bodily harm. This was a strike and a physical contact that did not result in great bodily harm." So Armstead's counsel made the same type of declaratory statement about Sparks' injuries that Armstead is now complaining about on appeal. We make this point not to excuse any error committed by the prosecutor but simply to point out that both sides made fair arguments in trying to convince the jury whether Armstead caused great bodily harm. We conclude the prosecutor did not misstate the law and committed no error in explaining to the jury what constitutes great bodily harm.

Armstead next points to the following statement made by the prosecutor:

"You have two fractures in the victim's face where he still has issues with his sight. So is there bodily harm? Yes, but it is great. Did great bodily harm or disfigurement happen? Yes. You know that because it did, so what you have is the primary charge of great bodily harm."

7

Armstead argues that the prosecutor's "[y]ou know" statement was error as an expression of a personal opinion over controverted evidence. "'[A] prosecutor's use of "we know" is acceptable when it "does not indicate [the prosecutor's] personal opinion, but demonstrates that the evidence was uncontroverted."'" *State v. Douglas*, 313 Kan. 704, 714, 490 P.3d 34 (2021). But for a prosecutor to use the term in describing disputed evidence is error. 313 Kan. at 714. Our Supreme Court has addressed a "you know" statement as a variation of "we know." 313 Kan. at 713-14.

Based on our Supreme Court's analysis in *Douglas*, we find the prosecutor's "[y]ou know" statement here was error where the prosecutor used the statement to declare that the jury knew that great bodily harm had occurred, which was disputed by the parties at trial. We will address reversibility later in this opinion.

Armstead next argues the prosecutor erred while making the following statements on lesser included offenses:

> "You can find him guilty of any of those, but what you do when you look through those is you start with that primary charge. You look through all of those elements. If you agree that is what occurred, you don't even have to move on to the next two. Once you find him guilty of that, you can stop right there. Only if you don't believe that that primary charge of great bodily harm occurred do you move to the next."

Armstead claims the prosecutor misstated the law by encouraging the jury to not consider all the possible lesser included offenses. But Armstead concedes that a similar argument was rejected in *State v. Scott-Herring*, 284 Kan. 172, 179, 159 P.3d 1028 (2007). There, the prosecutor stated during closing argument that if the jury did not find Scott-Herring guilty of first-degree murder, only then should it move on to lesser included offenses. The court found that "[t]he prosecutor advised the jury to analyze first-degree, premeditated murder first and, if the State had failed to prove it, then move on to the lesser included crimes. The prosecutor's comments properly stated the law." 284 Kan.

8

at 179. While Armstead argues that *Scott-Herring* was wrongly decided, we are duty bound to follow Supreme Court precedent absent a showing that the court intends to depart from its position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Seeing no such indication from our Supreme Court, we find no error in how the prosecutor addressed lesser included offenses.

We have identified only one prosecutorial error during closing argument, that being the prosecutor's "[y]ou know" statement in referring to great bodily harm. We find the error was harmless beyond a reasonable doubt. In contrast to this one isolated statement during closing argument, the jury heard and saw undisputed evidence for it to find that Armstead caused great bodily harm, including evidence of Sparks' fractured eye socket, photographs of Sparks' swollen and bloodied face on the night of the attack, and testimony that Sparks suffered long term vision problems from the attack. And we would reach this same conclusion on reversibility even if the prosecutor's declaratory statements about Sparks' injuries being great bodily harm were found to be erroneous. Along with the substantial undisputed evidence presented by the State at trial, the district court instructed the jury that statements of counsel were not evidence and to decide the case based on the evidence. We presume the jury follows the written instructions from the court. *State v. Brown*, 316 Kan. 154, 170, 513 P.3d 1207 (2022). Any error committed by the prosecutor during closing argument did not prejudice Armstead's right to a fair trial leading us to reverse his conviction of aggravated battery. See *Sherman*, 305 Kan. at 109.

*Did the district court err by failing to instruct the jury on reckless aggravated battery?*

Armstead next claims the district court committed clear error by failing to instruct the jury on the lesser included offense of reckless aggravated battery. The State contends such an instruction would not have been factually appropriate and even if it was, the district court's failure to give the unrequested jury instruction was not clear error.

"When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless. [Citation omitted.]" *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

"At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." 320 Kan. at 242. When the issue is whether an instruction should have been given, this court reviews whether the instruction accurately reflects the law. *State v. Buck-Schrag*, 312 Kan. 540, 550, 477 P.3d 1013 (2020). If so, it is legally appropriate. 312 Kan. at 550-51. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

Armstead acknowledges that he did not request an instruction on reckless battery below. When a party raises a jury instruction error for the first time on appeal, this court must determine whether the failure to give the instruction was clearly erroneous. K.S.A. 22-3414(3); *State v. Turner*, 318 Kan. 162, 166-67, 542 P.3d 304 (2024). To be clearly erroneous, the instruction must have been legally and factually appropriate and this court must be firmly convinced the jury would have reached a different verdict had the instruction been given. As the party asserting the error, Armstead has the burden to show both error and prejudice. See *Mendez*, 319 Kan. at 727-28.

The State does not contest that a reckless aggravated battery instruction would have been legally appropriate as a lesser included offense of intentional aggravated battery. Armstead argues the instruction also would have been factually appropriate and

10

points to the brief duration of the attack and the fact that he walked away as evidence supporting a finding that he acted only recklessly and not intentionally.

A person acts recklessly "when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j). A person acts knowingly "with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist" or "with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 21-5202(i).

The video of the attack, although brief in duration, supports only a finding that Armstead's unprovoked attack on Sparks was intentional and deliberate in terms of both the manner of Armstead's conduct and the intended result. Armstead deliberately approached the car in which Sparks was seated as a passenger, opened the front passenger door, and slugged Sparks several times in the face with his fists. Any juror viewing the video could only conclude Armstead's actions were intentional and not reckless. Moreover, Armstead's state of mind and culpable mental state was never raised as an issue at trial—Armstead's only defense to the aggravated battery charge was that Sparks' injuries amounted to bodily harm but not great bodily harm.

But even if we were to find that a jury instruction on reckless aggravated battery would have been factually appropriate, Armstead cannot show prejudice supporting clear error. We have just described how the video depicted Armstead's conduct during the attack. The State's evidence was undisputed. Armstead fails to firmly convince us the jury would have reached a different verdict had the instruction on reckless aggravated battery

11

been given. See *Mendez*, 319 Kan. at 727-28. We conclude the district court did not commit clear error by failing to instruct the jury on reckless aggravated battery.

Affirmed.